JOHN S. BYRNE, plaintiff in error, *vs.* EZEKIEL ATTAWAY, defendant in error.

Where it appeared from the record that A brought an action of trover to recover a wagon, which belonged to the Confederate States at the time of the surrender of General Joseph E. Johnston, and subsequent to such surrender was given to the brother of A, who was at work for the Confederate States authorities at Augusta, by the Confederate States Quartermaster, who gave it to A, and after such giving to A he took it from the depot at Waynesboro, where it was, and ran it off into the swamp, where B's negroes found it, and B had it brought to his house and repaired, etc., and afterwards, hearing that A claimed the wagon, B reported it to the United States' authorities, who gave B the possession and the use thereof; and, upon the trial, the Court rejected the written evidence of this possession by the Federal official in command of the District of Georgia, and charged the jury "that the receipt of the wagon by Attaway from a Confederate Quartermaster in settlement of his wages was a valid payment, and conferred a complete title, although the same was made after such surrender," and refused to charge as requested by defendant's counsel as to the effect of the sur. render, as to property, etc., and the jury found for the plaintiff, and a motion made for new trial upon the several grounds was overruled by the Court :

*Held,* That the Court erred in its view of the law of this case.   The defendant had a right to the evidence rejected, for the written permission of the authorities of the United States touching property captured or surrendered to it by the Confederate States authorities was admissible and proper evidence for the consideration of the jury.

The territory over which General Johnston had command, and which was covered by the surrender to General Sherman, being a part of the public history of the country, it was the duty of the Court to take cognizance of it without any proof of the fact, and the terms of this transaction being within the territory so embraced by the surrender, all property controlled by each military organization commanded by General Johnston was surrendered by him; and the Confederate States Quartermaster had no power, and could confer no title to the same by any act of his; and the surrender, without actual manual possession of the property surrendered by the United States authorities, conferred to them the title or right of possession to such property surrendered, and their disposition of such property was competent by such military orders as that government may have ordered, and admissible in evidence to show the fact, and are conclusive against any one claiming by Confederate States title, when such orders have been procured without fraud, and are properly proved.

Trover. Capture in war. Evidence. Before Judge GIBSON. Burke Superior Court. May Term, 1870.

Attaway brought trover against Byrne for a wagon. On trial, it appeared that Attaway's brother was a detailed soldier of the Confederate States, at Augusta, Georgia, when General Johnson surrendered its forces to General Sherman, of the United States, including the forces at Augusta. His pay as soldier was in arrear and the Confederate States Quartermaster, at Augusta, after the surrender, and when the Confederate States troops were disbanded, told him that the Confederate States currency was worthless and that he might take a wagon belonging to the Confederate States, at Waynesboro, Georgia, for his pay. He then told his brother, the plaintiff, of this, and that he might have the wagon. Thereupon plaintiff took the wagon and hid it to keep it from falling into the hands of the United States forces. Subsequently he found it in defendant's possession and demanded it, but he would not give it up. He proved its value, etc., and closed.

For defendant, it appears that Byrne found the wagon in the swamp where Attaway hid it, took it, repaired and used it, till the United States Provost Marshal ordered all Con-

federate States property brought to him; that he then took it to the Provost Marshal who told him he might keep it; that, after Attaway said it was his, the Assistant Quartermaster of the United States, at Augusta, upon a statement of the facts, gave Byrne written permission to keep it. He offered this writing as evidence, after proving its execution, but it was rejected. He testified that General Johnston's surrender covered all the Confederate States forces in Georgia. Defendant's counsel requested the Court to charge the jury that, by said surrender, the title to all Confederate States property in Georgia passed to the United States, and no agent of the Confederate States could pass title to it in payment of wages or otherwise. The Court refused so to charge, but charged that if said wagon was paid to Attaway for his wages as soldier as aforesaid he got title, though it was done after such surrender, provided the United States forces had not then reduced it to actual manual possession. He further charged that the surrender conveyed the title of only such property of the Confederate States as was in the actual use and control of Johnston's army in North Carolina at the time of the surrender; that the Court could not take judicial notice of the limits of the territory commanded by General Johnson, but it must be proved. Further he charged that the verbal permission of the United States Provost Marshal for defendant to keep the wagon could not avail defendant in this action.

The jury found for plaintiff the value and hire of the wagon. Defendant moved for a new trial upon the grounds that the verdict was contrary to the evidence, etc.; that the Court erred in refusing to charge as requested and in charging as he did. The Court refused a new trial, and error is assigned on said grounds.

J. J. JONES; A. M. ROGERS, for plaintiff in error. The Court should have judicially noticed the extent of Johnston's command: 2 War of the States, by Stephens, 628: 1 Gr. on

Ev., secs. 4, 5, 6 ; R. Code, sec. 3698. All C. S. property in Johnston's territory passed to U. S. by Johnston's surrender : 2 War of the States, 807. Plaintiff in trover must show title or possession : 2 Bou. L. D., 606 ; 1 Yeates' R., 19 ; 3 S. & R., 509 ; 15 John. R., 205, 349; 16th, 159 ; 1 Humph. R., 199 ; 2 Sel. N. P., 1377 ; 3 Pick. R., 258 ; 9th, 156; 22d, 535 ; 2 Gr. on Ev., sec. 636 ; 1 Kelly R., 381 ; 23 Ga. R., 63. Defendant may rely on title of stranger : 2 Gr. on Ev., sec. 648, and authorities there cited ; 19 Ga. R., 285.

S. A. CORKER, for defendant.

LOCHRANE, Chief Justice.

The question raised in this case, is as important as it is anomalous. After the surrender of General Johnston to the United States forces, every species of property was embraced by the surrender, which was controlled by the military organizations within the jurisdiction of General Johnston's command, and all right, title and possession, passed to the United States over the property surrendered; and the transfer of this property sued for, made by a Confederate States Quartermaster, subsequent to the surrender, was null and void, and could convey nothing to the party claiming under it. And we, therefore, hold, that the Court erred in charging the jury to the contrary. We hold again, that it was error in the Court to reject the evidence offered by the defendant protecting his title on the trial of the action of trover, as written permission given by the United States authorities relative to property captured or surrendered to the United States by the Confederate States authorities. It was admissible for the consideration of the jury, as such surrendered property was within the control of the United States, and the disposition of it by the military orders of that government was competent and proper evidence to have been submitted

upon the trial of the case, and ought to have been held by the Court as conclusive against any one claiming title through the Confederate States. And the only question to be determined by the jury, was the fact of whether the property was surrendered, and whether the military order disposing of it, was obtained fairly and without fraud. For, if the property sued for was, in fact, embraced by the surrender, and the United States authorities had disposed of it by an order procured without fraud and properly proven, it was admissible and conclusive as to the merits of the case. And we, therefore, reverse the judgment of the Court below refusing a new trial.

Judgment reversed.